IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLEY M. SENNETT | : |
| | : CIVIL NO. CCB-05-0864 |
| v. | : CIVIL NO. CCB-05-2570 |
| | : **ECF-Exempt** |
| RITE AID CORPORATION, et al. | : |

...oOo...

**<u>MEMORANDUM</u>**

The plaintiff Ashley Sennett, representing herself *pro se*, filed these two cases against defendants Rite Aid Corporation ("Rite Aid") and three of its employees, John G. Minas, Paul Harrington, and Carl Seeyle.[1] Ms. Sennett, a pharmacy technician for Rite Aid, alleges that she was entitled to receive a $1/hour raise from Rite Aid upon completion of an internal training course, whereas she only received a 50-cent/hour raise. The defendants have now filed a motion for summary judgment in both cases. The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the following reasons, the defendants' motions will be granted.

I. <u>Jurisdiction</u>

Before proceeding, the court will clarify the procedural posture of these cases and the court's jurisdiction. Because the plaintiff's initial complaint filed in the District Court of Maryland for Baltimore City invoked the federal Equal Pay Act, the defendants removed the case

---

[1] Michael J. Carlson, a lawyer for Rite Aid, was initially a defendant in the first suit, but he was dismissed by the court on June 30, 2005. Mr. Carlson filed a timely bill of costs, which will be denied. Mr. Seelye was added as a defendant in the second suit.

1



to this court, now captioned Civil No. CCB-05-0864, under the court's federal question jurisdiction. 28 U.S.C. § 1441(b). The plaintiff initially requested that the case be remanded to state court, and indicated her desire to "waive" her federal claims. *See* Plaintiff's Answer to Response in Opposition to Plaintiff's Request to Remand Case to State Court. She later demonstrated her willingness to proceed in federal court, however, and consented to mediation with Judge Gesner. *See* Letter of Ashley Sennett to R. Scott Krause, June 2, 2005. After mediation was cancelled, the plaintiff filed a second suit in Maryland district court – this time omitting any reference to federal law – under the impression that her first suit was no longer active. *See* Deposition of Ashley Sennett, Nov. 9, 2005, at 35-36 ("Q: Did you ever dismiss this case [the first case]? A: With the revised lawsuit. Q: Did you ever dismiss this case which was moved to Federal Court...? A: There's a newer case. This is an old case. Q: My question is: Have you ever dismissed this case? A: I don't know. But I know there's a new case with different information in it. So I'm not sure why we're even using this one."). The plaintiff failed, however, to take any necessary steps to dismiss her first suit in federal court.

Because the first suit was thus still active, the defendants removed the second suit, now captioned Civil No. CCB-05-2570, invoking the court's supplemental jurisdiction. 28 U.S.C. § 1367. The two cases have since been consolidated. The plaintiff filed a motion to remand the second case, but incorrectly filed it under the first case's docket number. *See* Plaintiff's Motion to Remand, docket entry no. 22, Civil No. CCB-05-0864. In any event, the court will deny the plaintiff's motions to remand. The court interprets her pleadings as requesting voluntary dismissal of her federal claims and will grant that request; nonetheless, the court will use its

discretion to retain supplemental jurisdiction over the remaining state-law claims.[2] 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995).

II. Standard of review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to...the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002),

---

[2] The Equal Pay Act claim was meritless, given that the plaintiff had no evidence of discriminatory pay practices by Rite Aid on the basis of gender, or otherwise. *See* Sennett Dep., at 37-38.

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Finally, the court notes that *pro se* filings are "held to less stringent standards than formal pleadings drafted by lawyers." *Allen v. Brodie*, 573 F.Supp. 87, 89 (D.Md.1983) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *White v. White*, 886 F.2d 721, 725 (4th Cir. 1989); *see also Symeonidis v. Paxton Capital Group, Inc.*, 220 F.Supp.2d 478, 480 n.4 (D.Md. 2002) (applying this principle in ruling on a summary judgment motion, but noting that *pro se* pleadings "must still set forth facts sufficient to withstand summary judgment").[3]

III. Analysis

As confirmed by her opposition brief, the plaintiff has asserted state-law claims against

---

[3] The defendants have complained about the considerable involvement of Ms. Sennett's stepfather, Dennis Parkinson, in this case. Mr. Parkinson has made no effort to conceal his involvement, has not held himself out as a lawyer, and has apparently acted at all times under the control and authorization of Ms. Sennett. The court will not strike any of the plaintiff's filings on this basis.

4

the defendants in the nature of negligent misrepresentation[4] and breach of contract.[5] To support her claims, Ms. Sennett attempts to rely on statements made both before and after she completed the course.

First, Ms. Sennett alleges that Rite Aid, through its agents, communicated to her before the fact that she would receive a $1/hour raise upon completion of the CPT course, and that she relied on these representations in enrolling in the course. When asked in her deposition for specific information, she indicated that pharmacy manager Zubair Azam and pharmacist Raj Bharmanapalli discussed the raise with her prior to her taking the course. (Sennett Dep., at 9-12.) However, Ms. Sennett could neither recall exactly when these conversations took place nor their precise content. Most significantly, she could not say whether the two employees made concrete promises to her on Rite Aid's behalf or merely general predictions or observations based on anecdotal evidence.[6] *See, e.g., id.* at 9-10 ("Q: Did he [Mr. Bharmanapalli] say you were – did he

---

[4] The elements of negligent misrepresentation under Maryland law are:
(1) The negligent assertion of a false statement by the defendant owing a duty of care to the plaintiff;
(2) The intention of the defendant for the plaintiff to act or rely upon the negligent assertion;
(3) The knowledge of the defendant that the plaintiff will probably rely upon the negligent assertion or statement which, if erroneous, will cause damage;
(4) Justifiable action by the plaintiff in reliance upon the statement or assertion; and
(5) The incurring of damages caused by the defendant's negligence.
*Garcia v. Foulger Pratt Development, Inc.*, 845 A.2d 16, 45 n.18 (Md.App. 2003)

[5] To establish a breach of contract claim, a plaintiff must demonstrate (1) the existence of a contractual obligation owed by the defendant and (2) that the defendants breached that obligation. *Continental Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (Md. 1977).

[6] Because the affidavits that Ms. Sennett attached to her opposition brief – one of which is attributed to Mr. Bharmanapalli – are unsigned, they cannot be considered as evidence by the court. The draft affidavits, which are similar in content, appear to have been prepared by the plaintiff, who contends that the individuals have not signed them for fear of retaliation. The defendants have submitted a signed affidavit by Mr. Prescimone, in which he denies both the

5

tell you that you were absolutely going to get a raise? A: Oh yes. He said that was most of the reason to do it, to get a dollar raise. Q: So he said that specifically to you? A: I don't remember if it was like that, but.") In addition, her initial complaint in state court alleged only that she was told that "it is usual and customary to receive a $1.00 pay increase," which could not reasonably be considered a promise that she would receive the same.[7] Moreover, these individuals lacked actual or apparent authority to bind Rite Aid in regards to such a raise. (Affidavit of Paul Harrington ¶ 3.) Ultimately, Ms. Sennett's mere belief that she would receive a $1/hour raise after completing the course, unsupported by a clear promise to that effect made by Rite Aid employees authorized to do so, cannot form the basis of a misrepresentation or breach of contract claim against any of the defendants.[8]

Second, Ms. Sennett points to communications after her completion of the course in the hopes of establishing a breach of contract claim. At the heart of this claim are two emails between Mr. Bharmanapalli and Mr. Minas, Pharmacy Development Manager, who together

---

substance of the plaintiff's purported affidavit and the contention that he did not sign it for fear of losing his job. See Affidavit of Charles Prescimone, ¶¶ 4- (Defs.' Reply, Ex. 14). This casts doubt on the veracity of all the draft affidavits.

[7] In her complaint, the plaintiff stated that, at some point, she received these statements in writing, but has never presented these documents nor evidence of their existence.

[8] Ms. Sennett also stated in her deposition that she would probably have taken the course anyway had she known she would only receive the 50-cent/hour raise. (Sennett Dep., at 43.) In her opposition brief, Ms. Sennett contends that she suffered damages not only due to the loss of the additional 50-cent/hour, but also because she turned down other higher-paying job opportunities in the expectation of receiving the full $1/hour raise. (Pl.'s Opp'n, at 5.) She has failed, however, to present any specific evidence of these other job opportunities, or of her efforts to procure a higher-paying job once she received the 50-cent/hour raise, which occurred almost two years ago. In any event, the court need not consider damages where there is no liability for misrepresentation or breach of contract in the first place.

6

recommended that Ms. Sennett get a $1/hr raise after completing the course. (Defs.' Mot., Exs. 5, 6.) Given that these emails were not originally addressed to Ms. Sennett and do not contain any concrete promises, they cannot form the basis of a contractual obligation to her.[9] Like Mr. Bharmanapalli, Mr. Minas also lacked authority to bind Rite Aid regarding such a raise; indeed, his email merely authorizes Mr. Bharmanapalli to *request* that Store Manager Charles Prescimone grant Ms. Sennett the raise. The ultimate authority to grant the raise in fact rested with Mr. Harrington, the District Manager, who granted her the 50-cent/hour raise in accordance with company practice and in light of her precertification wage. (Harrington Aff. ¶¶ 4-5; Affidavit of Carl Seelye ¶¶ 4-5.) Ms. Sennett's subsequent discussions with Mr. Harrington and Mr. Seelye, the Human Resources Manager, likewise cannot form the basis of a breach of contract claim, given that neither made any offer or promise to pay her the $1/hour raise. (Sennett Dep., at 17-22.) Ms. Sennett cannot establish a breach of contract claim against any of the defendants.

IV. Conclusion

It is apparent to the court that Ms. Sennett has been motivated in part by a desire to have her day in court, and indeed it is somewhat unfortunate that a *pro se* small-claims action, with originally less than $800 at stake, has ended up in federal court. Nonetheless, the plaintiff has not established any possible legal basis for relief. Accordingly, the defendant's motion for

---

[9] In addition, to the extent Ms. Sennett had already finished the course, any promise to pay her a $1/hour raise after the fact would likely not have been supported by valid consideration.

7

summary judgment will be granted by separate order.[10]

__3/06/06__  
Date

__/s/ Catherine C. Blake__  
Catherine C. Blake  
United States District Judge

---

[10] The court reminds the plaintiff that any further legal action based on the claims in this case would be subject to the principles of *res judicata* and therefore would likely be dismissed.

8